IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Steven Craig Fulghum, | ) | C/A No. 4:10-2112-JMC-KDW |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| vs. | ) | |
| | ) | |
| Wise Seats, Inc., Mike Yon and Jimmy Freudenberg, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Steven Craig Fulghum ("Plaintiff" or "Fulghum") filed this action in the United States District Court, Florence Division, on August 12, 2010, based on the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. Proceeding pro se, Plaintiff seeks recovery against Defendants Wise Seats, Inc. ("Wise" or "the Company"),[1] Jimmy Freudenberg ("Freudenberg"), and Mike Yon ("Yon"). He alleges state law causes of action for intentional infliction of emotional distress, defamation, breach of implied employment agreement, and wrongful termination, all arising out of his former employment with Wise. This matter comes before the court on Defendants' motion for summary judgment. ECF No. 75. The undersigned conducted a hearing on Defendants' motion on January 19, 2012, at which Plaintiff appeared pro se and Defendants appeared through counsel. Having considered the parties' briefs and argument, the undersigned submits this report[2] recommending Defendants' motion be granted.

---

[1] The defendant named as "Wise Seats, Inc." indicates its correct name is The Wise Co., Inc. *See* ECF No. 75-1 at 1, n.1.

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28, U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C. Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration.

I.   Factual Background

Defendant Wise is a manufacturer of marine interiors for the boating and watercraft industry. At all times relevant to this lawsuit, Defendant Yon was Wise's chief operating officer, and Defendant Freudenberg was Wise's president. Fulghum was hired as plant manager for Wise's Greeleyville, SC facility in August 2007. Fulghum Dep. 13:20-25.[3] Prior to being hired, Fulghum visited the company's Greeleyville facility and met with Yon. Fulghum Dep. 19:11-15; 20:1-18; Yon Aff. ¶ 3.[4] During that meeting Yon explained to Fulghum how the plant operated, and that he was looking for a "hands on" plant manager to run the facility. Fulghum Dep. 21:2-25; 22:1-14; Yon Aff. ¶ 3. Yon indicated to Fulghum that, if everything worked out, he hoped Fulghum would be there for a long time, and that he hoped Fulghum would retire there. Fulghum Dep. 100:5-13; 101:3-21. Following this meeting, Yon offered Fulghum the position of plant manager. Yon Aff. ¶ 3. Fulghum was not made any promises about how long he would be employed with Wise. Yon Aff. ¶ 4.

As plant manager, Fulghum had complete responsibility for the overall operations of the Greeleyville facility including developing and maintaining effective work schedules, ensuring that production goals were met, maintaining quality expectations, shipping customer orders in a proper and timely manner, and ensuring that labor costs did not exceed budgeted goals. Fulghum Dep. 33:25; 34:1-25; Yon Aff., ¶ 5. Fulghum also had the authority to hire, discipline, and terminate employees, and he could set work schedules for employees in the event that production required employees to work outside of the standard Monday-through-Friday work schedule set by the Company. Fulghum Dep.; 22:19-22; 23:12-15; 28:7-11; 32:17-22; Yon Aff. ¶ 5. Fulghum

---

[3] The referenced portions of Plaintiff's deposition transcript are available at ECF No. 75-2 through 75-5.
[4] Defendant Yon's affidavit is available at ECF No. 75-10.

could not set wages for the employees at the facility. Fulghum Dep. 31:5-10; 32:3-16; Yon Aff. ¶ 5.

Throughout the period Fulghum was employed with Wise, there were issues with maintaining production and ensuring proper product quality. Yon Aff. ¶¶ 10-15, 17; Freudenberg Aff. ¶¶ 4-7; Keels Aff. ¶ 3; Welch Aff. ¶ 4.[5] Throughout Fulghum's tenure as Wise's plant manager, the Company received complaints from customers that Fulghum had lied about deliveries having been shipped on time. Yon Aff. ¶17. Because of these complaints, Yon frequently contacted Fulghum to follow-up on the status of deliveries. Yon Aff. ¶ 17.

On April 8, 2008, Wise was fabricating the interiors for three new boats that were supposed to be shipped out to a customer that afternoon. Fulghum Dep. 111:25-113:10; Yon Aff. ¶ 18. That morning Fulghum received a call from the customer in which he was asked when the boats were going to be shipped out. Fulghum told the customer that they would ship out by 2:00 p.m. Fulghum Dep. 112:2-12. Yon also asked Fulghum when the boats would ship out to the customer and Fulghum told Yon that they would ship out by 2:00 p.m. Yon Aff.,¶ 18; Fulghum Dep. 111:13-18; Ex. 9. Later, Yon called Fulghum and asked if the delivery had been shipped. Yon Aff. ¶ 18. In response to Yon's question, Fulghum told Yon that the truck had already been loaded and that it was going out. Yon Aff. ¶ 18; Fulghum Dep.113:7-10. Although Fulghum knew that the boats were not ready to ship to the customer, Fulghum did not tell Yon the truth

---

[5] The affidavits of Welch, Freudenberg, Keels, and Ladd are available at ECF No. 75-6 through 75-10.
  Plaintiff does not agree that plant production and performance issues were attributable to him. *See, e.g.,* Compl. ¶ 21. None of the recommended rulings in this report and recommendation turns on disagreements regarding Plaintiff's work performance. Accordingly, it is not necessary that these details be discussed more fully herein or that they be undisputed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (finding an issue of fact is "material" for purposes of summary judgment only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law).

about the status of the order because he didn't want to get "yelled at" by Yon. Fulghum Dep. 114 20-25; 115:1-23; 116: 2-16. Yon then contacted shipping clerk Stanley Morgan and asked him whether the shipment had been sent to the customer. Yon Aff. ¶ 18; Fulghum Dep. 113:1-6. Morgan told Yon that the product was not on the truck, and that it was nowhere near going out. Yon Aff. ¶ 18.

After Yon confirmed that Fulghum had misrepresented the status of the shipment to the customer, he called Fulghum and told him he was terminated. Yon Aff. ¶ 18; Fulghum Dep. 112:21-25; 113:1-6. After Fulghum's employment was terminated, Assistant Manager Welch was asked to drive Fulghum home because he was using a company car. In the process of driving Fulghum to his home in Manning, South Carolina, Welch had a brief conversation with Fulghum regarding his termination. During this conversation, Fulghum admitted, "[t]hey caught me in a lie. I should not have done it." Welch Aff. ¶ 8.

II. Discussion

A. Standard of Review.

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto,* 405 U.S. 319 (1972); *see also Haines v. Kerner,* 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir.1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324–25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson,* 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251.

B. Analysis

Plaintiff's Complaint includes the following causes of action: intentional infliction of emotional distress; defamation; breach of implied employment agreement; and wrongful termination. Defendants seek summary judgment as to each of these causes of action.

1. Intentional Infliction of Emotional Distress (Outrage)

Defendants argue that the conduct complained of by Plaintiff, even when viewed in the light most favorable to him, does not rise to the level necessary to constitute outrage for purposes of his intentional-infliction-of-emotional-distress claim. ECF No. 75-1 at 7-9. The undersigned agrees.

To maintain a claim for intentional infliction of emotional distress or outrage, Plaintiff must establish the following:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
> (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community;
> (3) the actions of the defendant caused plaintiff's emotional distress; and
> (4) the emotional distress suffered by plaintiff was so severe that no reasonable man could be expected to endure it.

*Hansson v. Scalise Builders of S.C.,* 650 S.E2d 68, 70 (S.C. 2007) (internal citations and quotations omitted).

As explained by the South Carolina Supreme Court in *Hannson*, "the court plays a significant gatekeeping role in analyzing a defendant's motion for summary judgment[]" in order to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct[.]" 650 S.E. 2d at 72 (internal quotations and citations omitted). The *Hannson* court noted that a plaintiff alleging an emotional distress claim bears a "heightened standard of proof." *Id.*

In the employment context, mere termination or unpleasant conduct by supervisors does not rise to the level of actionable outrage. *See, e.g.*, *Alonso v. McAllister Towing of Charleston, Inc.* 595 F. Supp. 2d 645, 649-50 (D.S.C. 2009) (dismissing as a matter of law plaintiff's claim for intentional infliction of emotional distress because of termination and noting "having one's employment terminated is a stressful experience, but it can hardly be said to be an act so severe that no reasonable person could be expected to endure it.") (internal quotation omitted).

Here, Plaintiff alleges that Defendants Yon and Freudenberg caused him emotional distress by using derogatory language when speaking him about African-American employees.

6

*See* Compl. ¶¶ 5-7, 15-18. Plaintiff further alleges that Defendants asked him to treat black employees more harshly than white ones, and that this caused him emotional distress as well. *Id.* ¶ 6. Likewise, Plaintiff claims that Wise's pay scales did not treat all employees equally, and that this also caused him emotional distress. Compl. ¶ 8. He also alleges that Defendants micromanaged him, tried to sabotage his work, and ultimately fired him unfairly.

Having considered the facts and allegations in the light most favorable to Plaintiff, but performing the role of gatekeeper as to Plaintiff's cause of action for intentional infliction of emotional distress, the court finds Plaintiff has not met his burden of establishing a prima facie case of conduct that rises to the level of outrage under South Carolina law. *See Hannson*, 650 S.E. 2d at 72; *see also Johnson v. Dailey*, 437 S.E.2d 613, 615 (S.C. 1995) (noting the court determines, as a matter of law, whether a plaintiff's complained-of conduct was "so extreme and outrageous it exceed[ed] all possible bounds of decency, and [was] regarded as atrocious and utterly intolerable in a civilized society.") (internal citations omitted).

The use of the word "nigger" and other vulgar language in the presence of Plaintiff, although inappropriate, does not rise to the level necessary to state a claim. *See, e.g., Dodd v. City of Greenville,* C/A No. 6:04-469-HFF, 2007 WL 30333 (D.S.C. Jan. 3, 2007) (finding plaintiff had not established that defendants' conduct, which included the use of profanity in making harassing calls to plaintiff, rose to the level of outrage); *see also ITT Rayonier, Inc. v. McLaney*, 420 S.E.2d 610, 611 (Ga. Ct. App. 1992) (finding expressions of dissatisfaction with employee's job performance through crude language or suggestions they would be terminated if performance did not improve did not rise to the level of outrageousness).

With regard to Plaintiff's allegations that Defendants asked him to treat black employees differently from white employees, even taking these allegations as true for the purpose of this

motion, the conduct does not meet the required standard for outrageousness. As the court noted in *McBride v. WSPA Media General, Inc.*: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." C/A No. 6:07-467-HMH-WMC, 2007 WL 1795835, *5 (D.S.C. June 21, 2007) (citing *Restatement (Second) of Torts* § 46 comment d (1965)).

Similarly, Plaintiff's claims that Defendants tried to sabotage his work by providing him with inconsistent information or by failing to provide information are insufficient as a matter of law. The South Carolina Court of Appeals rejected an outrage claim based on allegations similar to Fulghum's. In *Wright v. Sparrow*, 381 S.E.2d 503 (S.C. Ct. App. 1989), the plaintiff alleged that her employer plotted to build a case to justify firing her by loading her with responsibility while stripping her of authority; and by changing the way she should perform her duties, and then accusing her of not following directions when she complied. The Court of Appeals held that the defendant's actions were not so extreme and outrageous as to exceed all bounds of decency. *Id.* at 473-74. In *Wiggins v. Browning*, C/A No. 6:94-1552-3AK, 1995 WL 1939177 (D.S.C. Apr. 3,1995), the court held that, even assuming defendant had set about making work unpleasant and difficult for plaintiff with the intention of making her quit, plaintiff had not established the outrageous behavior needed to state a claim for outrage. Here, as in *Wiggins*, Fulghum's allegations that Defendants' behavior made work unpleasant and difficult, (Compl. ¶¶ 5, 9, 11-12, 16-17), are not actionable.

Although Fulghum's termination and his displeasure with the management styles of Yon and Freudenberg may have been stressful and unpleasant, such allegations cannot support a claim for intentional infliction of emotional distress. Therefore, the undersigned recommends Plaintiff's claim of intentional infliction of emotional distress be dismissed as a matter of law as to all Defendants.[6]

2. Defamation

In support of his claim for defamation, Fulghum alleges that, because of his termination from employment for reasons he considers false, his resume is tarnished and he cannot now find employment. ECF No. 85-1 at 2. To establish a claim of defamation, a plaintiff must show the following: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication by the defendant to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or existence of special harm caused by the publication. *Fleming v. Rose,* 567 S.E.2d 857, 860 (S.C. 2002.)

Plaintiff admitted in his deposition that he has no evidence that any prospective employer refused to offer him a job based on statements by Defendants, and that, to his knowledge, the only information any potential employer has about his termination is what he has told them. Fulghum Dep. 99:2-5. Plaintiff conceded at the hearing that the basis for his defamation claim is that his otherwise-spotless resume has been tarnished, and that he is no longer able to get a well-paying job. None of these allegations amounts to actionable defamation. The fact that Plaintiff was discharged from Defendants' employment is true and that he may have included information

---

[6] Defendants also argue Plaintiff's outrage claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-540. *See* ECF No. 75-1 at 9-10. Plaintiff did not address that argument in responding to Defendants' motion. Because the undersigned finds Defendants are entitled to summary judgment on the merits of Plaintiff's outrage cause of action, the court need not consider Defendants' argument.

about his employment with Wise or his termination therefrom on his resume does not make it defamatory. *See Ross v. Columbia Newspapers, Inc.*, 221 S.E.2d 770, 772 (S.C. 1976) (noting publication of true information is not actionable). Further, Plaintiff has not pointed to a reason he was required to put information about how his employment with Wise ended on his resume, and the court is aware of no such requirement.

In addition to his claim that the termination damaged his resume, Plaintiff alleges the reasons Defendants gave to the South Carolina Employment Security Commission ("SCESC") for his discharge were false and amounted to a publication to a third party that [plaintiff] was unfit in [his] business or profession." Compl. ¶ 10. At the hearing on this motion, Plaintiff appeared to have abandoned this particular argument. Nonetheless, to the extent that Fulghum intends to base a claim of defamation on statements made to the SCESC, that claim is barred by S.C. Code Ann. § 41-27-560, which provides an absolute privilege to statements provided to the SCESC by an employer.

Specifically, section 41-27-560 provides that "[a] report, communication, or other similar matter, either oral or written from an employee or employer to the other or to the [SCESC] or its agents, representatives, or employees that has been written, sent, delivered, or made in connection with the requirements and the administration of . . . this title *must not be made the subject matter or basis of a suit for slander or libel* in a court of this State." S.C. Code Ann. §41-27-560 (emphasis added). Because any statement made by Wise's employees to the SCESC is subject to an absolute privilege, Fulghum cannot rely upon such statements to establish any claim of defamation against Defendants. Plaintiff's cause of action for defamation should be dismissed as to all Defendants.

3. Breach of Implied Employment Contract

Plaintiff alleges he had an implied contract of employment with Defendant Wise and that Defendants breached that contract when they terminated his employment in April of 2008. Compl. ¶¶ 27-33. Plaintiff admits he had no written contract of employment with Wise, but he claims that Defendants made certain statements at the time of his hiring that constituted an oral employment contract. South Carolina has long recognized the doctrine of employment at-will. *Lawson v. S.C. Dep't of Corr.*, 532 S.E.2d 259, 260 (2000); *Culler v. Blue Ridge Elec. Coop., Inc.*, 422 S.E.2d 91 (1992); *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (1985). An employee without a contract for a stated period of time is presumptively considered an employee at-will, and employers may terminate such employee's employment at any time. *Cape v. Greenville Cnty. Sch. Dist.*, 618 S.E.2d 881, 883 (2005). An at-will employment relationship is terminable by either party, for any reason or no reason at all. *Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 925 (1999).

An employer can alter an employee's at-will status, however, by entering into a contractual agreement with the employee, thereby limiting the ability of either party to terminate the employment relationship without incurring liability. *Small v. Springs Indus., Inc.*, 357 S.E.2d 452, 486 (1987). Plaintiff identifies the following statements from Defendant Yon as supporting his claim of an oral contract: (1) he would not micromanage Fulghum; (2) if everything worked out, Fulghum would be there a long time; and (3) he hoped Fulghum would retire with the Company. Fulghum Dep. 100:9-25; 101:1-24; 102:15-22. None of these statements is sufficient, as a matter of law, to alter Fulghum's status as an at-will employee. It is well established in South Carolina that an employment contract for an indefinite period is presumptively terminable at will. *See, e.g., Cape.,* 618 S.E.2d at 883; *Johnson v. First Carolina*

*Fin. Corp.,* 409 S.E.2d 804, 805-06 (S.C. Ct. App. 1991) (quoting *Small v. Springs Indus., Inc.* 388 S.E.2d 808, 810 (1990)).

In *Prescott v. Farmers Telephone Cooperative, Inc.* the South Carolina Supreme Court held that defendant's statement to plaintiff that he would have a job at the defendant company as long as he did his job and kept his nose clean was not sufficiently explicit to constitute an offer to limit plaintiff to being terminable only for cause. 516 S.E. 2d at 926. The court concluded that "a reasonable person in [employee's] position would construe the statement as praise or encouragement, or even 'puffery,' rather than as an offer of definite employment." *Id.* As the court explained, "[v]ague assurances of job security, even if repeated, do not give rise to contractual rights." 516 S.E.2d at 926. The *Prescott* court concluded that, because plaintiff had not proven the existence of a contract altering his status as an at-will employee, summary judgment on his breach-of-contract claim was appropriate. *Id.* at 927.

Similarly, the undersigned finds that Plaintiff here has not set forth statements that could be considered to give rise to contractual employment rights. Like the statement to the plaintiff in *Prescott* ("he would have the job as long as he kept his nose clean"), the statements to Fulghum that he would be there a long time, or that he might hope to retire with the Company are insufficient. Plaintiff's claim for breach of implied contract should be dismissed against all Defendants.

4. Wrongful Termination

  a. State-Law Claims As to Defendant Wise

Plaintiff's final cause of action is for wrongful termination, as follows:

35. Although Plaintiff Fulghum himself is not considered a "protected class" of citizen in relationship to race - Plaintiff Fulghum contends his termination was a direct result of his refusal to participate in the racist slurs, racist practices, and racist treatment of the African American employees of the Defendant Wise

12

> located in Greeleyville South Carolina. Therefore Plaintiff Fulghum was terminated for his refusal to participate in the racist illegal practices of Defendant Wise, Defendant Yon and Defendant [Freudenburg]; as well as Plaintiff Fulghum's attempts to end the racist, unethical, demoralizing, and degrading treatment of the Defendant Wise's African American employees.
>
> 36. As a proximate result and consequence of Plaintiff Fulghum's wrongful termination, Plaintiff Fulghum incurred and continues to suffer from substantial financial, emotional, and occupational harms and damages.
>
> 37. Due to the intentional, willful, wanton and/or reckless misconduct of Defendants Wise, Yon, and [Freudenburg] wrongful termination accompanied by defamatory and slanderous statements made by Defendants Yon and [Freudenburg] Plaintiff Fulghum is entitled to reasonable sum of punitive damages and subsequent back pay or salary in this matter.

Compl. ¶¶ 35-37.

Defendants argue that Plaintiff may not maintain his wrongful termination claim, claiming he has not established a state-law claim for wrongful termination. ECF No. 75-1 at 15-18. As noted by Defendants, South Carolina courts recognize the tort of wrongful discharge in limited circumstances. When an at-will employee demonstrates he was discharged because he refused to participate in an unlawful action, such retaliatory discharge falls within the public-policy exception to the at-will-employment doctrine. *See Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 at 225 ("Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises."); *see also Lawson*, 532 S.E.2d at 260-61.

Even assuming the facts in the light most favorable to Plaintiff—that he was terminated because he refused to participate in alleged discrimination—the court agrees with Defendants. South Carolina courts do not recognize a cause of action for wrongful discharge when the employee has a statutory remedy. *See Ramsey v. Vanguard Servs., Inc.*, C/A No. 07-265, 2007 WL 904526, *1 (D.S.C. Mar. 22, 2007); *Epps v. Clarendon Cnty.*, 405 S.E.2d 386, 387 (S.C.

1991). In this case, if Fulghum's allegations are true, then his remedy against Wise lies in a retaliatory discharge claim under Title VII of the Civil Rights Act of 1964, and he cannot maintain a state law cause of action for wrongful discharge against Wise. *See, e.g., Fraizer v. Target Corp.*, C/A No. 2:09-1625-PMD, 2009 WL 3459221, *2 (D.S.C. Oct. 27, 2009) ("It is well established [] that no common law public policy wrongful termination claim can be stated where the employee has an existing statutory remedy.") (internal quotation marks and citation omitted); *Smith v. Voorhees Coll.*, C/A No. 5:05-1911-RBH-BM, 2007 WL 2822266, *13 (D.S.C. June 14, 2007) (recommending dismissal of plaintiff's claim for wrongful termination based on *Ludwick* because she had an available federal statutory claim under Title VII, 42 U.S.C. § 2000e), adopted in 2007 WL 2822263 (Sept. 26, 2007); *Ramsey v. Vanguard Servs., Inc.*, C/A No. 8:07-265-GRA, 2007 WL 904526, 1-2 (D.S.C. Mar. 22, 2007); *Epps*, 405 S.E.2d at 387 (declining to extend the "*Ludwick* exception to a situation where [] an employee has an existing remedy for a discharge which allegedly violates rights other than the right to the employment itself.").

The undersigned agrees with Defendants that, as to Defendant Wise, Plaintiff may not pursue a *Ludwick*-type wrongful-termination claim under South Carolina law because he has a statutory remedy against Wise under Title VII. Defendants' motion for summary judgment should be granted as to Defendant Wise on this basis.

    b. Claims As to Defendants Yon and Freudenberg

The above analysis does not apply to individual Defendants Yon and Freudenberg because it is well settled that Title VII does not give rise to individual liability. *Lissau v. S. Foodservice*, 159 F.3d 177, 180-81 (4th Cir. 1998) (concluding that Title VII forecloses individual liability). The Fourth Circuit in *Lissau* observed, "Nowhere does the [Civil Rights

14

Act] mention individual liability as an available remedy. Had Congress felt that individual liability was 'needed to deter unlawful harassment and intentional discrimination,' surely it would have included this remedy in the 1991 Amendments." *Id* at 181 (quoting Congressional findings regarding the CRA).

Nor could Yon or Freudenberg be held liable under Title VII in their representative capacities, because Fulghum did not identify either of these individuals as respondents in his Charge of Discrimination filed with the South Carolina Human Affairs Commission ("SHAC").[7] *See* 42 U.S.C. § 2000e-5(f)(1) (a civil action may be brought only "against the respondent named in the charge"); *Causey v. Balog,* 162 F.3d 795, 800-01(4th Cir. 1998) (holding individual defendants were not subject to personal liability because they were not named as respondents in any of plaintiff's EEO charges). Therefore, although Title VII is Plaintiff's exclusive remedy for retaliatory discharge claims against his employer Wise, Title VII is not available to Plaintiff as a remedy against individual Defendants Yon and Freudenberg. Accordingly, Plaintiff's wrongful-discharge claim as to Yon and Freudenberg is not barred on the basis of there existing an available statutory remedy.

Plaintiff claims he was wrongfully terminated because he would not participate in the "racist illegal practice of Defendant Wise, Defendant Yon and Defendant [Freudenburg]." Compl. ¶ 35. To the extent Plaintiff has raised a "*Ludwick*-type" wrongful termination for public policy argument as to Defendants Yon and Freudenburg, the undersigned is of the opinion that such a claim should not proceed past the summary-judgment stage. As discussed in the following section, Plaintiff has not provided sufficient evidence to present to a jury that he was required to participate in "racist illegal practices" or that his failure to do so caused his termination. Because

---

[7] Plaintiff's completed Charge of Discrimination form is available at ECF No. 1-1.

his allegedly required participation in such practices would be the gravamen of a public-policy wrongful termination claim against the individual Defendants, summary judgment in favor of Defendants is appropriate.

    c. Title VII Claims As to Defendant Wise

        i. Retaliation

Plaintiff's complaint does not cite to Title VII or expressly plead a federal cause of action for wrongful termination. However, construing Plaintiff's pro se complaint liberally, the undersigned will consider Plaintiff's wrongful-discharge cause of action as a claim against Defendant Wise for retaliation under Title VII.[8]

To obtain relief based upon alleged retaliation under Title VII, a plaintiff must establish a prima facie case by demonstrating that: (1) he engaged in protected activity; (2) the employer took adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Brockman v. Snow,* 217 F. App'x 201, 206 (4th Cir. 2007) (citing *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991)); *Causey v. Balog*, 162 F.3d at 803. Under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), if a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pre-textual. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000).

---

[8]    In their brief, Defendant Wise analyzes and defends against a potential cause of action for reverse discrimination under Title VII. ECF No. 75-1 at 18-27. Liberally construing his complaint, however, the undersigned does not find that Plaintiff alleges he was discriminated against because of his race.

Here, Plaintiff readily satisfies the second element of his prima facie case. Having been discharged from employment, Plaintiff unquestionably suffered an adverse action. However, considering record evidence in the light most favorable to Plaintiff, he has not satisfied the first element of his prima facie case: he has not presented sufficient evidence to establish that he engaged in a protected activity. It follows, then, that he has not proven the third element: that engaging in protected activity was the cause of the adverse action (termination).

In his brief opposing Defendants' motion for summary judgment, Plaintiff argues that the "sole reason for his termination" was his "refusal to participate in the discrimination practices and management styles of Defendants Yon and Freudenberg via attempt to protect a protected class[.]" ECF No. 85-1 at 7. He "contends his termination was unlawful due to the nature of his termination in that it was a direct result of refusing to participate in illegal discrimination of the protected class, African Americans." ECF No. 85-1 at 7-8.

In his deposition, Plaintiff stated that he was told to treat black employees "harder" because of their race and to "be a bigger prick" to black employees. Fulghum Dep. 60:1-6; 65:18-20. He also testified that he had not treated any employees differently because of their race and that he did not tell his superiors that he opposed such requests. Fulghum Dep. 69:17-21; 77:13-78-1. He further testified that he never told Defendants Yon or Freudenberg that their derogatory language towards black employees bothered him. Fulghum Dep. 78:17-22. Plaintiff also alleges in his complaint that he was threatened with termination if he did not conform to "the management style" of paying blacks less than whites. Compl. ¶¶ 8-9. He testified, however, that he did not set the wage scale at the plant, nor did he have the authority to do so. Fulghum Dep. 87:6-16.

The undersigned finds Plaintiff has not established that he engaged in a protected activity under Title VII, and he therefore cannot satisfy the first or third[9] element of a prima facie case for a claim for retaliation. Accordingly, any Title VII claim for retaliation he raised should be dismissed.

ii. Hostile Environment

Plaintiff does not raise a Title VII claim related to a hostile work environment. Because his complaint mentions that his work environment was "extremely hostile" as a result of alleged racial comments by Defendants Yon and Freudenberg (Compl. ¶¶ 5-6), the court briefly considers whether he has presented a hostile-work-environment claim that should survive summary judgment as to Defendant Wise.[10] The undersigned finds Plaintiff cannot prevail on such a claim and recommends any such claim be dismissed as a matter of law.

A Title VII claim of hostile work environment is premised on the concept that "an employee's work environment is a term or condition of employment." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009) (internal quotation marks and citation omitted). To survive summary judgment on a claim of a racially hostile work environment, a plaintiff must show that "a reasonable jury could find [the] harassment (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001).

In order to establish that "race-based harassment was so severe or pervasive" as to alter the conditions of employment, Fulghum must show both that the conduct was subjectively hostile and objectively hostile. *Central Wholesalers, Inc.*, 573 F.3d at 175. Fulghum must "clear

---

[9] Because Plaintiff cannot establish he participated in a protected activity, he perforce cannot establish a causal connection between such participation and his termination.
[10] As discussed above, Defendants Yon and Freudenberg cannot be held individually liable under Title VII. *See Lissau,* 159 F.3d 177; *Causey,* 162 F.3d 795.

a high bar in order to satisfy the severe or pervasive test" by proving, through more than conclusory statements, that the work environment was "pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." *Id.* at 176.

Having reviewed the record evidence, the court finds Plaintiff has not provided evidence sufficient to clear the "high bar" necessary to establish severe or pervasive conduct. Fulghum has admitted that Yon and Freudenberg only used the term "nigger" occasionally, and, to Plaintiff's knowledge, only in his presence. Fulghum Dep. 57:8-25; 58:1, 19-25; 59:1-2. He has also admitted that neither Yon nor Freudenberg, nor any other member of Wise's management, used racially offensive or derogatory comments toward him or other employees. Fulghum Dep. 57:8-25; 58:1, 19-25; 59:1-2. Fulghum has admitted that he was not aware of Freudenberg's using racially offensive language around anyone other than himself. Further, Fulghum has admitted that, while Yon "occasionally" used offensive language, he never did so toward another employee. Fulghum Dep. 58:19-25; 59:1-2.

Accordingly, the undersigned finds that Plaintiff cannot present sufficient evidence upon which a jury could conclude that he was subjected to a racially hostile work environment. Any Title VII hostile work environment claim against Defendant Wise should be dismissed as a matter of law.

III.     Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment be granted on all claims as to all Defendants.

IT IS SO RECOMMENDED.

February 13, 2012  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**